Argued and submitted May 5, decided July 12, 1910.
Argued on rehearing May 1, decided May 23, 1911.

# OLIVER *v.* SYNHORST.

[109 Pac. 762; 115 Pac. 594.]

APPEAL AND ERROR—SUBSEQUENT APPEALS—FORMER DECISION AS LAW
OF THE CASE.

1. The law applicable to the contention of the parties having been
declared on a previous appeal, it becomes the law of the case on a
subsequent appeal.

ESTOPPEL—CLAIM TO PORTION OF STREET—ESTOPPEL OF CITY—EVIDENCE.

2. Evidence in support of an estoppel to deny an abutting owner's
claim to a portion of land within the line of a street *held* not to show
that she believed, when improvements were made within the street line,
that they were on her lots.

ESTOPPEL—CLAIM TO PORTION OF STREET—ESTOPPEL OF CITY.

3. A city is not estopped to deny an abutting owner's claim to land
in the street improved with a sidewalk and an expensive fence by the
fact that the council visited the property and made no objection to the
location of the improvements; their attention not being called to the
fact that the fences intruded on the street.

ESTOPPEL—CLAIM TO PORTION OF STREET—ESTOPPEL OF CITY.

4. Neither is it estopped by the fact that the mayor told plaintiff's
husband that there could be no objection to the construction of her fence
along a line in the street as no one could be injured thereby, as the mayor
cannot vacate a street by the most solemn act of authority, much less
by a mere casual expression of opinion.

EVIDENCE—FAILURE TO PRODUCE BEST EVIDENCE—INFERENCES.

5. Where the plaintiff alleges title against a defendant city to a
part of a street and attempts to establish title by oral testimony without
producing any deeds or records, such party having offered weaker oral
evidence when stronger evidence of the deeds or the record was within
his power, the court, under Section 868, subd. 7, L. O. L., is authorized
to view the oral testimony with distrust.

DEDICATION—ACTS CONSTITUTING DEDICATION—PLATTING.

6. A platting of property, followed by sale in pursuance thereof, con-
stitutes an irrevocable dedication to the public of the streets and alleys
delineated on the plat, without the necessity of acceptance by the public.

DEDICATION—CLAIM OF PORTION OF STREET—ESTOPPEL OF CITY.

7. Under Section 6371, L. O. L., which is an exact repetition of
Laws 1895, p. 57, § 1, and provides that title to land cannot be acquired
by limitations as against the rights of cities and towns in land dedicated
or otherwise acquired for a public street, a city is not estopped to deny
an abutting owner's claim to lands inclosed by a fence since 1891, but
claimed by the city as a street, the owner not claiming to know the
exact line and having no color of title, by a visit of the city council

to such land when certain improvements were being constructed by the owner, where there is no evidence as to where he was about to place such fence, or of what was said to the city council relative to the improvement.

From Union: HENRY J. BEAN, Judge.

Statement by MR. JUSTICE McBRIDE.

This is a suit by Anna Oliver to restrain Fred Synhorst as street commissioner of the City of La Grande, from removing plaintiff's fence, and destroying certain shrubs and trees upon lands inclosed by plaintiff, under the claim that such premises are situated upon a public street in the City of La Grande. The contentions of the parties are fully set forth in *Oliver* v. *Synhorst*, 48 Or. 292 (86 Pac. 376: 7 L. R. A. [N. S.] 243), and will not be re-stated here.                              AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Turner Oliver*.

For respondent there was a brief and an oral argument by *Mr. Joseph F. Baker*.

MR. JUSTICE McBRIDE delivered the opinion of the court.

1. This case was before this court upon a previous appeal (*Oliver* v. *Synhorst*, 48 Or. 292: 86 Pac. 376: 7 L. R. A. [N. S.] 243), and the law applicable to the contention of the parties, having there been declared, has become the law of this case, and it only remains to apply the principles therein enunciated to the facts proved on the trial. Upon the former trial Mr. Chief Justice BEAN used the following language: "But, while the rule may be that the ordinary statute of limitations as such cannot be set up to defeat the right of the public to the use of a street or highway, there may grow up, in consequence of the laches of the public authorities, private rights of more persuasive force in the particular case than that of the public, and if 'acts are done by an adjoining proprietor which indicate that he is in good

faith claiming as his own that which is, in fact, a part of the highway, and expending money on the faith of his claim, by adjusting his property to the highway as he supposes or claims it to be, the public will be estopped.' "

2. The evidence tends to show that, about 1891, plaintiff's grantor built a house on the land and planted shade trees in front of it, and actually in the street, which was then entirely unimproved. She testifies that she intended to inclose her own property but there is no evidence that she took any measures whatever to ascertain the exact lines of her lot, and the rough and almost inaccessible nature of the land was such as to warrant the belief that the street north of there would not be improved in the near future.

When plaintiff purchased the property, which was done through her husband, who was an attorney and business man of La Grande, a sidewalk was built south of the trees, which had been plainted by plaintiff's grantor, and an expensive fence erected several feet south of the original fence, but still extending into the street about six feet. The evidence does not satisfy us that plaintiff believed, when these improvements were made, that they were upon the lots she had purchased. Nor does plaintiff's husband, who is the principal witness, and who was her active representative, so testify. He only claims that he did not know where the street line actually was, a fact that he could easily have ascertained in an hour's investigation. The situation of other buildings in the same addition must have been notice to him that his wife's improvements extended into the street, and we think that he depended more upon the probability that the street would remain unimproved than upon a belief that his improvements were upon his own property. In other words, being uncertain as to the exact line, he was willing to take the chance of an improvement

being made in the future. This comes far from the good faith required in these cases to constitute ground upon which to predicate an estoppel.

In the smaller towns of this State it is not unusual for streets, in remote districts, to remain unopened and unimproved, until they become sufficiently populous to justify levying assessments upon adjoining property to improve them. To require a city to open and improve all its streets at once, without reference to the need of such improvement, at the peril of forfeiting them, would be absurd, as a matter of public policy, and would, if carried out, prove an intolerable burden to those owning lots on remote and unfrequented streets.

3. There is nothing in the fact that the council visited the property and made no objection to the location of plaintiff's improvements. The testimony shows that they visited the premises to investigate the location of a cesspool, and their attention was not called to the fact that plaintiff's fence intruded upon the street.

4. Nor does the fact that the mayor told plaintiff's husband that "there could be no objection to the construction of plaintiff's fence along the Remington line, as no one could be injured thereby," estop the city. The mayor cannot vacate a street by the most solemn act of authority, much less by a mere casual expression of opinion. As was intimated by Mr. Chief Justice BEAN in his previous opinion in this case, the principle of an estoppel *in pais* will only apply in exceptional cases, and in our judgment this is not a case of that character.

The decree of the circuit court will be affirmed.

AFFIRMED.

MR. JUSTICE EAKIN did not sit in this case.

Argued May 1, decided May 23, 1911.

ON REHEARING.

[115 Pac. 594.]

Statement by MR. JUSTICE BURNETT.

The pleadings and the law of this case were settled by the decision of this court reported at 48 Or. 292 (86 Pac. 376: 7 L. R. A. [N. S.] 243). Much of the complaint had been stricken out on motion in the circuit court, and the propriety of that ruling was the only ques-tion considered here on the first appeal. The effect of our decision on that appeal was to reinstate the matter thus excluded and allow the plaintiff to prove the same, if she could, at a new trial in the court below. The second hearing in that court resulted in a decree dismissing the suit, and on the second appeal in an opinion by Mr. Justice McBRIDE (109 Pac. 762) the disposition of the case by the circuit court was affirmed. A rehearing in this court having been granted, we have listened to exhaustive arguments on the facts and have carefully studied the testimony reported in the record, and it remains to determine anew whether the complaint is substantially proven.                         AFFIRMED.

DECISION APPROVED ON REHEARING.

On rehearing there was an oral argument by *Mr. Turner Oliver* for appellant.

For the respondent there was an oral argument by *Mr. Charles E. Cochran.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The premises of the plaintiff are situated in block 74 of Chaplin's addition to the City of La Grande, in Union County. Fourth Street in that addition runs north and south and bounds the block on the east. O Street runs east and west and bounds it on the north. Lot 5 is at the northeast corner of the block. Lot 6 adjoins it on the

south, and these two lots have a frontage of 110 feet on Fourth Street. Lots 3 and 4 have each a frontage of 60 feet on O Street, and all four of the lots have a depth of 110 feet and as a body are bounded on the south by an alley running east and west through the block. Turner Oliver, the husband of plaintiff, purchaser lots 4, 5, and 6 from Mrs. Teresa D. Remington and afterwards conveyed them to his wife, the plaintiff, who purchased lot 3 direct from another grantor. The husband of plaintiff appears to have performed as her agent all the doings ascribed to her in the complaint and was her principal witness at the hearing in the court below. She herself did not testify.

The complaint states "that the plaintiff is, and for several years last past has been, the owner in fee simple of lots 3, 4, 5, and 6 of block 74 of Chaplin's addition to the City of La Grande, in Union County, State of Oregon, and of all land inclosed by the fence which now incloses all of said lots 5 and 6 and most of said lots 3 and 4." It is admitted that the plaintiff is the owner of the four lots mentioned. The allegation implies that the plaintiff owns ground in her inclosure besides the lots. Does the testimony prove her title to the additional ground?

The plaintiff attempts to establish her allegation of title by the oral testimony of Turner Oliver and his grantor, Mrs. Remington. Objection was made to this testimony because the deeds or the records thereof were the best evidence, and, avoiding that objection, counsel for plaintiff, at the hearing, promised to produce the deeds later; but they were not produced and do not appear in the evidence.

5. Having offered the weaker and less satisfactory oral evidence when the stronger and more satisfactory evidence of the deeds or the record was within the power of the plaintiff, we are authorized, under Section 868,

subd. 7, L. O. L., to view the oral testimony with distrust and to presume that the property was conveyed to plaintiff and her predecessors in title by numbers of the block and lots as designated on the recorded plat, rather than by metes and bounds including more than the area of the lots in question as shown on the map. Lots must have been sold with reference to the plat mentioned in the complaint, else how could plaintiff have acquired any title whatever to the lots under that description?

6. Such a platting of property followed by sale in pursuance thereof constitutes an irrevocable dedication to the public of the streets and alleys delineated on the plat, and further acceptance by the public is unnecessary. *Spencer* v. *Peterson,* 41 Or. 257 (68 Pac. 519, 1108); *Moore* v. *Fowler,* 58 Or. 292 (114 Pac. 472). The principle sustaining these decisions is that the dedicator, by sale with reference to a plat, is estopped from thereafter claiming any title or interest in the streets or alleys designated on the plat.

In good reason a person acquiring property with reference to such a plat is equally bound by the plat with reference to the streets and alleys marked out. At least his conduct in thus purchasing ought to be considered as strong evidence tending to refute his claim for additional ground lying in the street. To sustain the plaintiff's contention she has several times stated in her complaint that her acts in improving her property were done with the consent of the City of La Grande. There is no evidence in the record that the city ever did any act or took any affirmative cognizance whatever in that behalf which would indicate any consent thereto on the part of the city.

"The right of cities and towns (whether incorporated or not), within the State of Oregon to land dedicated to or otherwise acquired for the public use for streets, highways, parks, or public place, shall not be extinguished by any adverse possession, however long continued, and no

title to such lands as against any city or town (whether incorporated or not), shall be hereafter acquired in this State through the operation of the statute of limitations." Section 6371, L. O. L.

This section is an exact repetition of the first section of the act of February 23, 1895 (Laws 1895, p. 57), and together they operate to defeat any title to ground in the street by mere prescription, for the first inclosure was made by Mrs. Remington, and, according to the pleadings, it could not have been earlier than some time in 1891. If she or her successors in interest ever had any incipient title by prescription, the statute cut it off before it ripened by lapse of time. In order, therefore, to acquire title to the land lying in the street as portrayed on the map, it is incumbent on the plaintiff to show something beyond mere possession and user on her part. It is incumbent upon her to disclose by the evidence some conduct by the city leading the plaintiff on to do acts such as it would be against equity and good conscience to permit the city at this time to disavow.

7. Much is claimed by the plaintiff for the fact that the city council came to her premises to view a cesspool in use there, and that at the time the new fence and walk were in contemplation and in process of construction. There is no testimony, however, about the then condition of the proposed new fence, or what was said to the city authorities about the plaintiff's contemplation of that improvement. The premises were so much out of joint with the rest of the town as to give pause to plaintiff and her husband, managing for her, so that they moved their fence in from the place where the former fence stood, and, even if the council on the occasion referred to saw the fence in process of construction, they might well have thought that the plaintiff was about to put the fence on the true line. The plaintiff's husband, her grantor and managing agent, often saw the recorded

plat of the addition in question and was familiar with
its lines. He knew that all its lines were straight and
all its angles right angles. The premises in question as
inclosed by the fence plainly did not correspond with the
plat, for its angles included by the fence were very
plainly not all right angles, nor was its O Street boundary
a straight line. In the course of her improvement of
the property, the plaintiff built a wall along the south
side of her premises on the alley line. Her own measure-
ment across the east end of lots 5 and 6 along Fourth
Street shows that she has 114 feet within her inclosure;
whereas, the dimension of the two lots abutting upon
that street is only 110 feet. The commonest kind of
observation with respect to the improvements on adjacent
lots and blocks would have shown the plaintiff that her
inclosure was encroaching upon the street. The general
trend of the testimony shows that the plaintiff acted
without trying to discover the true line. In fact, her
husband avows as much, and states substantially that
he never did know where the true line of the street was.
There is evidence in the record tending to show that his
attention was called to the fact that his fence encroached
upon the street. The plaintiff is presumed to know what,
with ordinary care, she might have discovered by search-
ing the records or causing a survey to be made. This
case is easily distinguishable from the cases of *Schooling*
v. *Harrisburg*, 42 Or. 494 (71 Pac. 605), and *Nodine* v.
*Union*, 42 Or. 613 (72 Pac. 582). In those cases the
plaintiffs claimed the ground in the alleged streets not
only by virtue of adverse possession and the making of
permanent improvements, but also by deeds from the
original owners of the title, thus giving the plaintiffs color
of title to support their claims. Here neither plaintiff
nor her grantors have any color of title to the already
open ground within the street lines. The inception of
their holding was a wrongful encroachment upon the

street in favor of which, so far as the city is concerned, the statute of limitations does not run.

We conclude that there is no showing of irreparable injury to the plaintiff or any act or omission of the city sufficient to amount to an estoppel or to take the case out of the effect of Section 6371, L. O. L., *supra*.

We adhere to the former opinion affirming the decree of the court below.

AFFIRMED: DECISION APPROVED ON REHEARING.

MR. CHIEF JUSTICE EAKIN, and MR. JUSTICE BEAN took no part in the hearing or decision of this case.